UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| EDWARD KIMMIE, | ) | CASE NO. 1:06 CV 1302 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| REGINALD WILKINSON, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On May 25, 2006, plaintiff pro se Edward Kimmie filed this action under 42 U.S.C.
§1983 against Ohio Department of Rehabilitation and Correction ("ODRC") Director Reginald
Wilkinson, Toledo Correctional Institution ("ToCI") Warden Mr. Konteh, Trumbull Correctional
Institution ("TCI") Warden Mr. Bobby, ToCI Major Mr. Smith, ToCI Corrections Officer Mr.
Alexander, ToCI Corrections Officer Mr. Davis, ToCI Corrections Officer Mr. Hans, ToCI Deputy
Warden Ms. Brown, ToCI Health Care Administrator Ms. Wilson, TCI Health Care Administrator
J. Edwards, TCI Physician Dr. Stabil, ToCI Physician Dr. Okoro Bonaventure, TCI Corrections
Officer Mr. Urbana, Warren Correctional Institution ("WCI") Corrections Officer Mr. Horton,
North Central Correctional Institution ("NCCI") Corrections Officer Mr. Teroch, ODRC Chief
Inspector Gary Croft, ODRC Chief Counsel Gregory Trout, Ohio Court of Claims Deputy Clerk
Daniel Borchert, ODRC Chief Inspector Larry Yoder, Ohio Court of Claims Employee Miles C.

Durfey, ToCI Nurse Ms. Burtile, ToCI Nurse Ms. Hill, ToCI Corrections Officer Mr. Logan, TCI Corrections Officer Mr. Hartman, ODRC Classification Bureau Chief William Elby, and ToCI Institutional Inspector B. Bartleson.  In the complaint, plaintiff challenges numerous conditions of his confinement in NCCI, WCI, Corrections Medical Center ("CMC"), TCI and ToCI.  He seeks $ 3,000,000.00 in monetary damages.

## Background

Mr. Kimmie's complaint is a very complicated and disjointed account of his prison experience over the course of the last six years.  He indicates he injured his shoulder during a scuffle with Ross Correctional Institution officers in 2000.  He claims an MRI taken at that time showed damage to the shoulder.  He was transferred to TCI in October 2000.  He contends he was placed on permanent medical idle status.  He states he re-injured the shoulder in August 2003 when he fell from the top bunk.  He was referred to Dr. Stabil, an orthopedic specialist, who gave him some exercises to improve mobility, and prescribed Flexerall for the pain.  He states that the medication did little more than make him drowsy.  It is not clear whether his medications were altered.  Mr. Kimmie claims the treatment plan did not completely alleviate the pain.  In May 2004, he was given a set of exercises by a nurse.  He contends he attempted to perform the exercises and injured his back.  When he saw Dr. Stabil in August 2004, he was given the same set of exercises to perform.

On September 30, 2004, Mr. Kimmie was transferred to NCCI.  He claims that some of his property was confiscated upon his entry to the institution.  He further alleges Corrections Officer Teroch destroyed some of that property. He contends he filed a case in small claims court and the judge ruled in favor of the defendants.

2

Mr. Kimmie was transferred to WCI some time thereafter.  He contends that the transfer was in retaliation for filing a complaint in small claims court.  He indicates that the medical staff immediately prescribed Ultram and Darvocet for pain and ordered another MRI.  On August 18, 2005, Mr. Kimmie was transported to CMC where he underwent surgery on his shoulder.

Upon his release from the medical center, Mr. Kimmie was taken back to TCI, where he was sent directly into the general population.  He further states, without explanation, that he was denied a meal by Corrections Officer Hartman, was not given additional time to eat his meal, and was not permitted to sit in the medical section of the dining hall.  (Compl. at 4.)  He states that he was "harassed on a daily basis by [Corrections Officers] Ball, Beverly, and Augustonelli, [and his] headphones were broken by [Corrections Officer] Urbanna."  (Compl. at 5.)  He claims TCI Warden, Mr. Bobby, "lied and covered up his officer's inappropriate supervision."  (Compl. at 5.)

Mr. Kimmie's personal property arrived from WCI on September 12, 2005.  He contends that although his surgery was a scheduled event, his property was left in his cell for an unspecified period of time.  He claims that when his property arrived, he was missing his new shoes, belt, watch, sweatshirt, two tee shirts, and a velour shirt.

Following the surgery, Mr. Kimmie reported pain and loss of mobility in his shoulder.  He contends that Dr. Stabil continued to manipulate the shoulder during his office visits, even after Mr. Kimmie reported that this action caused him discomfort.  In addition, Mr. Kimmie was placed on temporary medical idle status following his surgery.  The medical idle status expired on December 1, 2005.  Mr. Kimmie complains that it was not immediately renewed at his medical appointment several days later.

Mr. Kimmie was transferred to ToCI on January 24, 2006.  He indicates that the

3

transfer was done in retaliation for grievances he filed against TCI personnel.  Mr. Kimmie claims that on the day of his arrival at ToCI, he was placed in segregation because he would not lift a box. He contends that Corrections Officer Alexander assaulted him while he was handcuffed.  He states he asked to be examined by someone in the medical department.  He states that a nurse arrived but refused to perform a physical examination.  He indicates that while in segregation he was not given hygiene items, the light was continually left on in his cell, his hands were cuffed behind his back whenever he was taken from one place to another, and his shoulder "was constantly grabbed." (Compl. at 3.)  He claims he was assaulted again on February 2, 2006 by Corrections Officers Alexander and Davis.  He states on February 3, 2006, Corrections Officer Davis came to his block and "singled [him] out to harass [him]."  (Compl. at 6.)  He states that Davis took part in the cell searches and followed him to the medical department.

Dr. Okoro Bonaventure took Mr. Kimmie off of medical idle status on January 25, 2006.  Mr. Kimmie alleges that this action further jeopardized his health.  He states that the Health Care Administrator did not promptly return his Informal Complaint Resolution grievance forms. He states that Dr. Bonaventure has done nothing to address the continuing problems with shoulder pain and he believes the physical therapist "doesn't even know what's wrong with my shoulder." (Compl. at 7.)  He states he reported to nurses sick call and told Nurse Burtile that his shoulder was continually hurting, and was sliding out of place.  He claims she did not write down his complaint and did not refer him to see the doctor.  On February 14, 2006, Sergeant Logan and Corrections Officer Deal threatened to make him go to work, even though Mr. Kimmie claimed he was on medical idle status.

Mr. Kimmie states he was placed in segregation on February 21, 2006 in retaliation

4

for using the grievance system.  He claims that on that same day, Corrections Officer Hans assaulted him by handcuffing him and placing pressure on his shoulder.  He indicates that while he was in segregation, he did not receive a conduct report, shower shoes, a copy of the Quran, and basic hygiene items.  He states his property was taken and destroyed.

Also on February 21, 2006, Mr. Kimmie signed up for sick call.  He was seen while in segregation on February 28, 2006.  He was seen by a physician on March 8, 2006.  The physician refused his request for Ultrim and instead, prescribed Motrin for the pain.  He again signed up for sick call on March 13, 2006 and reported that the medication was upsetting his stomach.  He was told to take it with food.

Kimmie concludes with a group of objections to his current conditions.  He questions whether his mail is really getting out of the institution.  He states he has not been given annual security status reviews.  He contends he has been held at security level 3 but is eligible for security level 2.  He states that this is a form of retaliation.  He has requested that he be returned to TCI but his request has been refused.  He also claims this is a form of retaliation.  He states he did not receive the proper medication for four days from January 30, 2006 to February 2, 2006.  He claims his family tried to send him a packet of blank envelopes but prison officials would not allow him to have them.  He claims they are the same envelopes which are available for purchase in the commissary.  He states he believes he is not receiving the proper dose of medication.  He contends that his pill was dissolved in a cup of water on April 13, 2006.  Finally, Mr. Kimmie states, generally, that the Institutional Inspectors and Wardens covered up the behavior of the other prison officials by failing to respond favorably to his grievances and by failing to provide him with the proper number of blank grievance forms.

## **Exhaustion of Administrative Remedies**

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), cert. denied, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in his complaint. Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001); Curry, 249 F.3d at 504-05. In the absence of such particularized averments concerning exhaustion, the action must be dismissed. Id.

Ohio Administrative Code § 5120-9-31 sets forth a three-step grievance procedure for administrative remedies for inmates housed in Ohio prisons. Under this section, an inmate initiates the grievance procedure by filing an Informal Complaint Resolution form with the prison official whose area of responsibility is most related to the grievance. OHIO ADMIN. CODE § 5120-9-31(J)(1). If the inmate is dissatisfied with the informal complaint response, or if there has been no response to the complaint, the inmate may file a Notification of Grievance form with the

6

Institutional Inspector.  OHIO ADMIN. CODE § 5120-9-31(J)(2).  If this second step does not provide satisfactory results, the inmate may file an appeal with the office of the Chief Inspector.  OHIO ADMIN. CODE § 5120-9-31(J)(3).  The Chief Inspector's written response to the inmate's appeal is the final decision on the grievance.  Grievances against the Warden and Institutional Inspector must be filed directly to the Office of the Chief Inspector.  OHIO ADMIN. CODE § 5120-9-31(L).  The decision of the Chief Inspector or designee is final.  OHIO ADMIN. CODE § 5120-9-31(L).

Mr. Kimmie attaches 745 documents to his pleading.  Of those documents, 66 are medical passes, 3 are contraband control forms, 23 are cash withdrawal slips, 33 are kites to staff members, 11 are conduct reports and disciplinary related documents, 5 are miscellaneous order forms, addresses and identification cards, 20 are inmate property records, 53 are copies of court documents, 12 relate to his security classification status, 270 are letters, over half of which are personal letters addressed to an individual identified only as "Pumpkin," and 261 are grievance forms which comprise 59 separate grievances.[1]  Mr. Kimmie mixed these grievances randomly throughout the other documents and made no attempt to group together grievances forms with the same grievance number to demonstrate exhaustion.  Nevertheless, after painstaking review of each of these forms, the court has determined that many of those grievances were either not exhausted,

---

[1]    When a Notification of Grievance form is filed, the ODRC assigns it a 7 digit identification number which helps track the exhaustion process of a particular grievance.  The 261 grievance forms represent 59 grievance ##s: 02-06-021, 03-06-002, 05-06-003, 03-06-012, 03-06-013, 03-06-014, 03-06-001, 02-06-019, 02-06-001, 02-06-023, 01-06-002, 02-06-018, 12-05-008, 09-05-019, 01-06-008, 12-05-013, 08-05-002, 02-06-008, 02-06-017, 01-06-010, 01-06-007, C1-06-059, C1-06-097, C1-06-131, 08-03-005, C1-05-434, 10-05-017, 09-05-012, 12-04-012, 04-05-002, 03-05-001, 04-05-013, 05-05-004, 12-04-011, 12-04-010, C1-04-202, C1-04-287, 08-03-005, 02-06-007, 11-04-037, 10-05-007, 11-05-002, C1-05-397, C1-05-448, C1-05-391, 10-04-021, C1-05-021, C1-04-475, 10-05-017, C1-05-489, C1-05-087, 06-05-015, 06-05-007, C1-05-289, C1-05-490, 07-06-005, 06-06-025, 06-06-013, 07-06-010.  Many of the 261 grievance forms provided with the complaint were photocopies or duplicates of other forms already attached.

were exhausted against individuals who are not defendants in this matter, were exhausted but pertain to incidents which are not mentioned in the body of the complaint, or were exhausted after the date the complaint was filed in this court.  Section 1997(e) requires prisoners to exhaust their administrative remedies *prior* to filing suit.  They may not exhaust these remedies during the pendency of the action.  See Freeman v. Francis, 196 F.3d 641,643 (6th Cir. 1999).  They cannot abandon the process before completion and claim that they exhausted their remedies nor can they assume that a grievance would be futile and proceed directly to federal court with their complaints.  See Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999).  Moreover, prisoners are required to exhaust the claims contained in the complaint against individuals named as defendants in this case.  See Curry, 249 F.3d at 504-05.

Of the 59 grievances attached to the complaint, only 9 of them demonstrate exhaustion of a claim contained in this pleading against a defendant named in this action.  Several of these grievances are duplicative.  Mr. Kimmie exhausted his general allegations of harassment by Corrections Officers Davis and Anderson, his allegation that he was physically assaulted by Corrections Officer Alexander on January 24, 2006, his allegation that Dr. Stabil permitted his temporary medical idle status to expire, his allegation that ToCI Institutional Inspector B. Bartleson did not answer grievances and did not provide grievance forms in order to cover unconstitutional actions of the other defendants, allegations that Corrections Officer Hartman denied him a meal, and his allegations that Dr. Stabil was not providing adequate physical therapy for his shoulder.  All other allegations in this pleading, not otherwise addressed in this Memorandum of Opinion and Order are dismissed without prejudice pursuant to 42 U.S.C. § 1997e.

## 28 U.S.C. § 1915(e)

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2]  Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). While his claims against Dr. Stabil for deliberate indifference to serious medical needs and his claim against Corrections Officer Alexander for physical assault may have arguable merit, the same cannot be said for his claims against Corrections Officer Davis and Alexander for harassment, his claim against Corrections Officer Hartman for denying a meal, and his claims against Institutional Inspector Bartleson for the manner in which he handled Mr. Kimmie's many grievances.

As a threshold matter, Mr. Kimmie fails to allege facts to reasonably suggest that Officer Alexander, Officer Davis, and Officer Hartman violated the Eighth Amendment in these instances.  He contends without explanation, in either his pleading or his grievances, that Officers Alexander and Davis harassed him.  Similarly he states only that Officer Hartman denied him a meal on one occasion, but does not provide any other information.  Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337,

---

[2]     An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

347 (1981). The Supreme Court in <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. <u>Id.</u> Seriousness is measured in response to "contemporary standards of decency." <u>Hudson v. McMillan</u>, 503 U.S. 1,8 (1992). Routine discomforts of prison life do not suffice. <u>Id.</u> Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. <u>Id.</u> at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. <u>Id.</u> A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

As a threshold matter, plaintiff fails to establish the objective component of his claims. His conclusory statements of harassment do not demonstrate that a sufficiently serious deprivation has occurred. Legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual inferences. <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987); <u>see also</u>, <u>Place v. Shepherd</u>, 446 F.2d 1239, 1244 (6th Cir. 1971) (conclusory section 1983 claim dismissed). Moreover, mere harassment by prison guards is insufficient to state a claim of constitutional proportion. <u>See</u> <u>Ivey v. Wilson</u>, 832 F.2d 950, 955 (6th Cir. 1987)(finding verbal harassment and offensive comments are generally not cognizable as constitutional deprivations). Similarly, the allegation that he was forced to miss one meal, standing alone, does not rise to the level of an extreme deprivation which defies "contemporary standards of decency." Consequently, Mr. Kimmie's claims of harassment against Corrections Officers

10

Alexander and Davis, and his claim against Corrections Officer Hartman are dismissed pursuant to 28 U.S.C. § 1915(e).

Furthermore, his claims against Institutional Inspector Bartleson, as well as his claims against Warden Konteh, Warden Bobby, ODRC Chief Inspector Gary Croft, Chief Counsel Gregory Trout, Health Care Administrator Wilson, Health Care Administrator Edwards, and ODRC Chief Inspector Larry Yoder are without merit and subject to dismissal. Mr. Kimmie alleges that these individuals refused to give him grievance forms, refused to respond to his grievance forms, or issued unfavorable decisions on his grievances in an attempt to conceal the actions of the other defendants. Responding to a grievance or otherwise participating in the grievance procedure, however, is insufficient to trigger liability under 42 U.S.C. § 1983. Shehee v. Luttrell, 199 F.3d. 295, 300 (6th Cir. 1999). As plaintiff has failed to allege facts to reasonably indicate these defendants engaged in other activities which would indicate they violated his constitutional rights, his claims against these defendants are dismissed.

Although ODRC Director Reginald Wilkinson and Court of Claims Employees Miles Durfey and Daniel Borchert are named as defendants in the case caption, Mr. Kimmie does not include any allegations against them in the complaint. A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. Rizzo v. Goode, 423 U.S. 362, 371 (1976); Mullins v. Hainesworth, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). The complaint simply contains no facts which reasonably associate these defendants to any of the claims set forth by plaintiff.

It is plausible that Mr. Kimmie named Reginald Wilkinson as a defendant simply

because Mr. Wilkinson supervises or employs other defendants named in the complaint. It is also plausible that ToCI Health Care Administrator Ms. Wilson, ToCI Warden Mr. Konteh, TCI Health Care Administrator J. Edwards, and TCI Warden Mr. Bobby are named in the complaint because they supervise other individuals named in the complaint. "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir.1999) (citing Leach v. Shelby County Sheriff, 891 F.2d 1241, 1246 (1989)). Rather, the supervisors must have actively engaged in unconstitutional behavior. Id. Therefore, liability must lie upon more than a mere right to control employees and cannot rely on simple negligence. Id. Plaintiff must prove that they did more than play a passive role in the alleged violations or show mere tacit approval of the goings on. Id. He must show that the supervisors somehow encouraged or condoned the actions of their inferiors. Id.; see also Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir.1995). Mr. Kimmie's complaint contains no suggestion that Reginald Wilkinson, Ms. Wilson, Mr. Konteh, Mr. Bobby or J. Edwards engaged in the sort of conduct for which they could be held personally liable. The claims against these defendants are also dismissed pursuant to 28 U.S.C. § 1915(e).

## Conclusion

Accordingly, plaintiff's claims against Reginald Wilkinson, Ms. Wilson, J. Edwards, Miles Durfey, Daniel Borchert, B. Bartleson, Gary Croft, Gregory Trout, Larry Yoder, and Mr. Hartman, and his claims of harassment against Corrections Officers Alexander and Davis, are dismissed with prejudice pursuant to 28 U.S.C. §1915(e). His remaining claims against Warden Konteh, Warden Bobby, Mr. Smith, Mr. Davis, Mr. Hans, Ms. Brown, Dr. Bonaventure, Mr. Urbanna, Mr. Horton, Mr. Teroch, Ms. Burtile, Ms. Hill, William Elby and Mr. Logan are

dismissed without prejudice pursuant to 42 U.S.C. § 1997e.  The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]  This case shall proceed solely against Dr. Stabil on Mr. Kimmie's claims of deliberate indifference to serious medical needs, and against Officer Alexander on Mr. Kimmie's claim that he was assaulted on January 24, 2006.  The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon the defendants.

IT IS SO ORDERED.


Date: September 13, 2006                         S/John R. Adams                         
                                               JOHN R. ADAMS
                                               UNITED STATES DISTRICT JUDGE

---

[3]        28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.

13